```
                                 UNITED STATES DISTRICT COURT
                                 SOUTHERN DISTRICT OF FLORIDA

                                 CASE NO. 06-14269-CIV-MARTINEZ
                                 MAGISTRATE JUDGE P.A. WHITE
TERRY GLISPY,              :

      Plaintiff,           :

v.                         :          REPORT OF
                                    MAGISTRATE JUDGE
ROY RAYMOND, et al.,       :

      Defendants.          :
_____
```

## I  INTRODUCTION

Plaintiff Glispy filed an amended <u>pro se</u> civil rights complaint pursuant to 42 U.S.C. §1983 (DE#11), alleging endangerment based on events which occurred on February 12, 2004, at the Indian River County Jail ("IRCJ"), where he was then confined. Glispy's claim of endangerment, or failure to protect him from risk of harm, stemmed from an alleged physical attack upon him by another inmate [Craig Bell] at the IRCJ recreation yard. The incident allegedly occurred when more than 100 inmates were released into the yard. All of the high risk inmates, wearing red jumpsuits, were required to wear leg shackles. Inmates in lower risk classifications, wearing green or blue jumpsuits, were unrestrained. Glispy, who was a red-suited inmate, claimed that his leg shackles impeded his ability to protect himself from his inmate attacker. He also alleged that officers did not intervene to stop the attack.

After prior Reports (DE#s 11, 78, 100), and Orders thereon (DE#s 20, 81, 109), the case remains pending only against defendants Prouty, Pratt, and Strickland on a claim that they failed to intervene to protect Glispy at the time of incident. (Order of District Judge, DE#109). The Court granted them leave to file a joint supplemental motion for summary judgment. Despite the Court's admonishment that it would not consider three separate motions from the defendants on the remaining claim (Order DE#109, p.5, n.1), the defendants did not file jointly. **This Cause is before the Court upon motions for summary judgment by Strickland (DE#110), Pratt (DE#111) and Prouty (DE#112),** as to which plaintiff was advised of

his right to respond (see Order of Instructions, DE#113).[1]

In support of his motion DE#110, Strickland filed Exhibit A, Glispy's Depo [DE#110-2]; and Exhibit B, Strickland's Affidavit [DE#110-3]. Pratt filed two exhibits, Exhibit A, Glispy's Depo [DE#111-2], and Exhibit B, Pratt's Affidavit [DE#11-3]. Prouty has filed three exhibits, Exhibit A, Glispy's Depo [DE#112-2], Exhibit B, Prouty's 2/12/04 Incident Report [DE#112-3], and Exhibit C, Prouty's Affidavit [DE#118]. Plaintiff's Response (DE#116) was

---

[1] Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted)

Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11 Cir. 1990).If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the non-moving party, in this case the plaintiff, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11 Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714 (11 Cir. 1987); Brown v. Shinbaum, 828 F.2d 707 (11 Cir.1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11 Cir. 1992).

The Order of Instruction which was entered (DE#113) informed the pro se plaintiff of his right to respond to the defendants' motions for summary judgment (DE#s 110-112)), and instructed him of the requirements under Fed.R.Civ.P. 56 for a proper response to such motions.

addressed to all three of the defendants motions.

## II   DISCUSSION

Prison administrators are charged with a duty, under the Eighth Amendment, of taking reasonable measures to guarantee the safety of inmates, including to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S.Ct. 1970, 1976 (1994). In this case, it appears that the plaintiff was a pretrial detainee at the time of the events alleged, and that his claim, which would have arisen under the Eighth Amendment had he been a convicted prisoner, instead arises under the Fourteenth Amendment. For all intents and purposes, however, the standard remains the same, and cases that would apply to convicted prisoners' claims also apply to those brought by a pretrial detainee.[2] In order to establish a "failure to protect" violation, the inmate must show that the defendant officer "acted or failed to act despite his knowledge of a substantial risk of serious harm," Farmer, supra, 511 U.S. at 842; 114 S.Ct. at 1981.  A prison official may not escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complaintant was especially likely to be assaulted by the specific prisoner who eventually committed the assault. Farmer, 511 U.S. at 843; 114 S.Ct. at 1982. The question is, whether the prison official, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health," Id., quoting Helling v. McKinney, 509 U.S. 25, 31 (1993); and it does not matter whether the risk comes from a single source or from

---

[2]   Claims concerning conditions to which pretrial detainees are subjected are governed by the Due Process Clause of the Fourteenth Amendment, Bell v. Wolfish, 441 U.S. 520, 535 (1979). See Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11 Cir. 1985)(for analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment); Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11 Cir. 1996)("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.... However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees.")

multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." Farmer, supra, 511 U.S. at 843; 114 S.Ct. at 1982. A prisoner's failure to give advance notice to prison officials of potential danger to [his] safety, alone, is not dispositive of the issue of the official's awareness, Farmer, supra, 511 U.S. at 848; 114 S.Ct. at 1984 (noting that the district court, below, may have placed decisive weight on petitioner's failure to notify respondents of a risk of harm; but further noting that the failure to give notice is not necessarily dispositive, because the petitioner [prisoner] may establish respondents' [defendant prison officials'] awareness by reliance on any relevant evidence). The Court further stated that advance notice by a prisoner of a substantial risk of assault posed by a particular fellow inmate is not a prerequisite for establishing an Eighth Amendment violation, Farmer, supra, 511 U.S. at 849 n.10; 114 S.Ct. at 1985 n.10.

As the Supreme Court noted in Farmer, prison officials who actually knew of a substantial risk to inmate health or safety may be found free of liability if they responded reasonably to the risk, even if the harm ultimately was not averted, where a prison official's duty under the Eighth Amendment is to ensure reasonable safety. Farmer, 511 U.S. at 844; 114 S.Ct. at 1982-83. The Court further noted that "[w]hether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishment Clause." Farmer, 511 U.S. at 545; 114 S.Ct. At 1983.

The Eleventh Circuit, post-Farmer, has held that "[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth [here the Fourteenth] Amendment." Cottone v. Jenne, 326 F.3d 1352, 1358 (11 Cir. 2003) (quoting Marsh v. Butler County, 268 F.3d 1014, 1028 (11 Cir. 2001). It has also held that, to prove such a violation, the inmate/plaintiff must show (1) that there existed an objectively substantial risk of serious harm; (2) that the defendant was

subjectively aware of the risk; and (3) that the defendant nonetheless responded to that risk in an objectively unreasonable way. See Cottone, supra, 326 F.3d at 1358 (citing Farmer, supra, 511 U.S. at 834, 844-45, 114 S.Ct.1970, 1977, 1982-83). The Court has further held that the constitutional violation (i.e., the official's disregard of the risk) must be shown to have caused the plaintiff's injury. Cottone, supra, at 1358 (citing Marsh, supra, at 1028). Finally, with regard to a defendant's subjective awareness of a serious risk of harm, he/she "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979; Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11 Cir. 1996). As the Eleventh Circuit also has noted post-Farmer, proof that the defendant should have perceived the risk, but did not, is insufficient. Campbell v. Sikes, 169 F.3d 1353, 1364, (11 Cir.1999)(citing Farmer, at 838); Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11 Cir. 1996) (the official must have a subjectively "'sufficiently culpable state of mind,'" and "[t]here is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not...'") (quoting Farmer, supra, 511 U.S. at 834, 838).

If Glispy's complaint/claim were construed as alleging that one or more of the defendant officers failed to step in and act, where another officer or officers had failed to do so, the claim might be viewed as analogous to a traditional "failure to intervene" claim, which usually arises in the context of use of force by an officer against an arrestee or inmate. In such a case, an officer, who is not the one using force, may still have a duty to "intervene" and prevent his fellow officer from committing the alleged unlawful act. See Fundiller v. City of Cooper City, 777 F.2d 1436, 1441-42 (11 Cir. 1985) (claims of excessive force are cognizable under §1983, as are claims of nonfeasance by an officer present at the scene who fails to take steps to protect a victim from a fellow officer's use of excessive force); and Velazquez v. City of Hialeah, 484 F.3 1340, 1342 (11 Cir. 2007) ("an officer who is present at such beating [a fellow officer's excessive use of

force] and fails to intervene may be held liable though he administered no blow"). In such a case, however, the officer who is sued because he/she did not intervene to prevent the alleged excessive force, must have a realistic opportunity to prevent the alleged illegal conduct. If events occurred too quickly for the officer to intervene, or some other factual scenario made it impossible for the defendant officer from preventing the event which harmed the plaintiff, he/she cannot be held liable for failure to act or prevent the harm. See Ensley v. Soper, 142 F.3d 1402, 1407-08 (11 Cir.1998); Byrd v. Clark, 783 F.2d 1002, 1007 (11 Cir.1986); Yang v. Hardin, 37 F.3d 282, 285 (7 Cir.1994). By analogy, in a case such as this, if an officer is sued because he/she did not step in to stop an ongoing fight between inmates, where fellow officers had not done so, the officer who failed to intervene and act in his/her fellow officer's stead, could only be held liable if he/she was physically able and had a realistic chance to intervene and act in time to protect the inmate plaintiff.

The defendants argue that there is no genuine issue as to any material fact in this case; that they were not deliberately indifferent to plaintiff's right to be free from a known risk of bodily harm; that there was no casual connection between them and the alleged deprivation; and they are entitled to qualified immunity.

In this case, careful review of the record (including each of the defendants' motions, plaintiff's complaint and deposition, the Incident Report drafted by Prouty, and the Affidavits executed by the defendants Strickland, Pratt, and Prouty) reveals that the defendants are entitled to summary disposition in their favor of the claim which remains pending against them, because the record evidence does not show that they were deliberately indifferent, and because they are entitled to qualified immunity.[3]

---

[3] It is apparent that the defendants are entitled to qualified immunity, which under appropriate circumstances insulates governmental officials from the burdens of civil trials and from personal liability for actions taken pursuant to their discretionary authority. Saucier v. Katz, 533 U.S. 194 (2001); Harlow v. Fitzgerald, 457 U.S. 800 (1982); Vinyard v. Wilson, 311 F.3d 1340, 1346 (11 Cir. 2002). Flores v. Satz, 137 F.3d 1275 (11 Cir. 1998); Foy v. Holston,

As noted in the prior Report (DE#100), review of Glispy's deposition transcript reveals that he has admitted that he did not know that inmate Bell, as an individual, posed a specific risk of harm to him; that he [Glispy] had gone to recreation dozens of times over a 6 month period when Red, Blue and Green inmates were mixed on the yard, and never saw a lower-risk/unrestrained Blue or Green inmate attack a shackled Red-suited inmate; and finally, that if Glispy perceived a risk of harm to himself, he never complained administratively, so as to put jail staff on notice of that risk. Glispy was a red-suited high risk inmate, wearing leg shackles. According to Glispy, inmate Bell, his alleged attacker, approached him using body language, began uttering personal insults, and swung

---

94 F.3d 1528 (11 Cir. 1996); McMillian v. Johnson, 88 F.3d 1554, 1562, amended on other grounds, 101 F.3d 1363 (11 Cir. 1996). Once the qualified immunity defense is raised by a government official and that defendant has first shown that he was acting within his discretionary authority, Cottone v. Jenne, 326 F.3d 1352, 1357 (11 Cir. 2003), the burden shifts to the plaintiff to show that qualified immunity is not appropriate. Id., at 1358; Foy, supra, at 1532. The two part test which ensues requires that, first, the court must determine that the plaintiff's allegations, if true, establish a constitutional violation. Second, if under the plaintiff's version of the facts, a constitutional deprivation did occur, the next step is to determine whether the right was clearly established a the time of the alleged deprivation. See Katz, supra, 533 U.S.; Vinyard, supra, 311 F.3d at 1346.

Here, it is clear that defendants were was acting within their discretionary authority. The test for courts to use in determining whether an official is protected by qualified immunity is whether the official's conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800 (1982). The usual rule is that qualified immunity protects government actors, and "only in exceptional cases will government actors have no shield against claims made against them in their individual capacities." Foy, supra, 94 F.3d at 1532(quoting Lassiter v. Alabama A & M Univ., 28 F.3d 1146, 1149 (11 Cir. 1994). Once the qualified immunity defense is raised by a defendant, as the defendants Strickland, Pratt, and Prouty have done in this case, the burden shifts to the plaintiff Glispy to show that the federal rights allegedly violated were clearly established, and this burden is not easily discharged. Foy, supra, at 1532. Plaintiffs cannot carry their burden of proving the law to be clearly established by stating constitutional rights in general terms. Id. Rather, if qualified immunity is to be denied, "pre-existing law must dictate, that is, truly compel...the conclusion for every like situated, reasonable government agent that what defendant is doing violates federal law in the circumstances..." Lassiter, supra, at 1150. In this Circuit the law can be "clearly established" only by precedent from the U.S. Supreme Court, the Eleventh Circuit, or the highest Court of the state. See Jenkins v. Talladega City Board of Education, 115 F.3d 821, 827 n.4 (11 Cir. 1997). Here, it is clear that the plaintiff Glispy, based on the facts of record, cannot satisfy the burden required of a plaintiff under Lassiter.

at Glispy first. Glispy acknowledges using force in return, "protecting myself." He states that the scuffle lasted perhaps 10-15 minutes; that it was initially broken up by other inmates who were on the recreation yard; and that officers then arrived, and put him in wrist restraints and took him for medical treatment. As noted, supra, a copy of plaintiff's deposition transcript is filed as an exhibit to each of the defendants' supplemental summary judgment motions. (See DE#s 110-2; 111-2; 112-2).

The evidence established by the defendants' Affidavits, and Prouty's Incident Report, which is not refuted by the plaintiff's Response, is as follows. On February 12, 2004, the IRCJ had four buildings, each staffed with 2 deputies to respond to calls for assistance. (DE# 110-3, Strickland Affidavit). Strickland was watch commander, responsible for overseeing the operation of the entire facility, and those responsibilities often prevented him from responding immediately to certain types of calls for assistance, such as altercations between inmates. (Id.). Initial response to altercations, either between inmates, or altercations involving staff, is handled by floor deputies at the jail. (Id.). Moreover, when deputies are called to respond to a call for assistance, due to the manner in which the jail facility is set up to maintain a secure environment, when deputies respond to a call for assistance at another building, it is necessary for them to pass through several electronically controlled doorways. The responding deputies must wait for one door to be closed before the next door can be opened electronically; and it therefore takes several minutes for a deputy to respond to a call for assistance with is at another location in the jail. (Id.). Strickland states in his Affidavit that on 2/12/04 he had no reason to believe that appropriate personnel were not responding to the altercation between inmates Glispy and Bell; and by the time that he arrived at the B/D recreation yard, the fight between the two inmates had already been broken up, and there were already several deputies present, as well as a member of the medical staff. (Id.).

In her Affidavit, Pratt, a Sergeant at the time of the 2/12/04

incident, was the IRCJ housing supervisor, responsible for overseeing floor deputies, insuring that they handled situations properly, and handling problems that deputies could not handle on their own. (DE#111-3, Pratt Affidavit). On 2/12/04, Pratt responded to the B/D recreation yard because of a fight that had broken out between inmates Glispy and Bell. When Pratt arrived at the B/D yard, the fight was already broken up, and other deputies had physically restrained the inmates involved. (Id.). Although Pratt did respond to the scene, she was not an "Initial Responder," and responding immediately to altercations between inmates was not among Pratt's primary responsibilities as housing supervisor. Initial responses to those types of situations are handled by floor deputies assigned to each building. (Id.). On 2/12/04, Pratt was not there to take physical action related to the altercation, but rather to ensure that the situation had been properly handled, and that all necessary documentation was completed. (Id.). Because the matter involved a physical confrontation, both Bell and Glispy were seen by medical staff. (Id.).

Prouty's Affidavit (DE#118-2) establishes that he was the Tower deputy for the B/D recreation yard. This means that he was responsible for monitoring the inmates while they were on the recreation yard; but he was not permitted to leave the tower and physically respond to the recreation yard. (Id.). When he saw that a fight involving Glispy and Bell had begun, Prouty immediately called for assistance using the hand held radio he had in the tower. Moments later, when Prouty noticed that inmate Bell appeared to be bleeding profusely, he was concerned that a weapon might be involved, and again radioed to deputies who were responding to give them that additional information, and so as to advise them to bring medical personnel and bio-hazard protection (Id.).[4] Deputy

---

[4] In his Incident Report (DE#112-3), Prouty stated that he observed Glispy striking Bell in the head with a closed fist, and saw Glispy continuing to strike Bell on the ground until an unknown inmate stepped in and attempted to pull Glispy off of Bell. The altercation ceased for a brief time, and then he saw Glispy striking Bell again on the head and upper body with his fist; and he observed that Bell was bleeding. The incident report further indicates that prior to the arrival of officers Stallings, [Ha]rris, Gregg, Pratt, and Strickland, several unknown inmates had intervened and restrained Glispy and Bell. When the

Stallings was the first officer to arrive on the scene at the recreation yard, and he was accompanied by a nurse. Shortly after they arrived, several other officers arrived from an adjacent door. (Id.).

Strickland and Pratt both correctly assert that there must be a causal connection between them and the alleged deprivation of an individual's constitutional rights, and that they cannot be held vicariously liable under a theory of *respondeat superior* for acts or omissions of subordinate officers.[5] Although Strickland and Pratt did have knowledge of the incident since Prouty had put out a radio call for assistance, Strickland and Pratt have shown through their respective Affidavits that they reasonably believed that the floor deputies, whose assigned duties included acting as first responders in the case of inmate altercations, were responding to the call. By the time that Strickland and Pratt arrived on the scene (and in fact by the time that floor deputies who were responding arrived) the two fighting inmates had already been separated by other inmates, and the fight was over.

Prouty, who was confined to the tower, immediately acted when

---

officers arrived, the two inmates were already separated; the officers put them in mechanical hand restraints for officer safety; Glispy was assessed by nurse Litwiler, and Bell was escorted to the medical department by Deputy Stallings. Thereafter, both inmates were placed in Administrative Confinement, pending disciplinary hearing for fighting.

[5] It has long been established that public officials in supervisory positions cannot simply be held vicariously liable for the acts of their subordinates. Robertson v. Sichel, 127 U.S. 507 (1888); Byrd v. Clark, 783 F.2d 1002, 1008 (11 Cir. 1986); Jasinski v. Adams, 781 F.2d 843 (11 Cir. 1986); Fundiller v. City of Cooper City, 777 F.2d 1436 (11 Cir. 1985). Nor can liability be predicated solely upon the doctrine of respondeat superior in a §1983 action. Monell v. Department of Social Services, 436 U.S. 658 (1978); Harris v. Ostrout, 65 F.3d 912, 917 (11 Cir. 1995); Swint v. City of Wadley, Ala., 5 F.3d 1435, 1450 mod. on rehearing 11 F.3d 1030 (11 Cir. 1993); Vineyard v. County of Murray, Georgia, 990 F.2d 1207 (11 Cir. 1993). Supervisory liability requires a causal connection between actions of the supervisory official and an alleged deprivation [for example, a showing of knowledge of a history of abuses and failure to take corrective action]. Byrd v. Clark, supra at 1008; Fundiller v. City of Cooper City, supra at 1443; Wilson v. Attaway, 757 F.2d 1227, 1241 (11 Cir. 1985); Sims v. Adams, 757 F.2d 829, 831-32 (5 Cir. 1976). See: Kerr v. City of West Palm Beach, 875 F.2d 1546, 1055-57 (11 Cir. 1989).

10

he saw the fight erupt, by making a radio call to deputies for assistance. Moments later, when he saw that Bell was bleeding, he made a second call, to make sure that officers knew special security and medical precautions might be necessary. Prouty clearly cannot be held liable under a fact scenario such as this, where due to his security related duties he was not permitted to leave his post, and personally attempt to intervene to break up the fight.

Finally, based on the plaintiff's admissions, that he personally did not expect an attack by inmate Bell, that he had not previously had altercations with him, and that he had not notified jail administration or staff that he had reason to fear for is safety when going onto the recreation yard in a red jumpsuit and leg shackles, there is nothing to establish that the three defendants, Strickland, Pratt, and Prouty, had reason to believe that Bell or any other inmate in particular, posed a known risk of harm to Glispy, so as to require that they (the defendant officers) should take some precautionary measure to protect Glispy from harm. As noted supra, it is not enough for the plaintiff to show that a defendant should have known of a risk of harm to his health or safety. Nor does it suffice to show that a defendant was aware of facts from an inference could be drawn that a substantial risk of serious harm existed. The defendant must not only have been aware of the facts showing that a substantial risk of harm existed, but he or she must also be shown to have actually drawn the inference that the risk existed, and then it must be shown that the defendant still failed to act. In this case that showing has not been made with respect to any of the three defendants.

### III CONCLUSION

It is therefore recommended that: 1) the supplemental motions for summary judgment by Strickland (DE#110), Pratt (DE#111), and Prouty (DE#112) be GRANTED; and 2) this case be closed.

11

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated: August 3rd, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Terry A. Glispy, <u>Pro Se</u>
DC# 574217
Liberty Correctional Institution
11064 NW Dempsey Barron Road
Bristol, FL 32321-9711

Jason Lee Scarberry, Esquire
Bruce Wallace Jolly, Esquire
PURDY, JOLLY, GIUFFREDA & BARRANCO, P.A.
2455 E. Sunrise Blvd., Suite 1216
Fort Lauderdale, FL 33304